This is our third case of the morning, Gina Holland v. Streeter Asphalt, 4090434 for the appellate, Mr. Allison, and for the appellee, Mr. Resses, is that you?  Resses, thank you. You may proceed. May it please the court, Mr. Resses. I suggest this case may break down into basically two issues. First of all, was the decision in Dotson v. Shaw, this district case from about 1983, I believe it is, was that, I don't want to say the right decision, but was it the correct, was it the proper decision to be made under the statute when taking into account the legislation itself, and if you get beyond that, taking into account what we think is prior binding Supreme Court direction on how to interpret a safety statute? And then, if it was not the correct and proper decision, what is this court to do about it? As I suspect you already know, the case involved in a motor vehicle accident on a road close to Pontiac, Illinois, that was under construction, they were resurfacing it. My client was a passenger, the car went off the road in the construction area and he was killed. We think that there is a cause of action under the Road Worker Safety Act under those circumstances. We believe that if you look at Section 1 and then Section 6, and there isn't a state in my brief, I regret, on page 9, subject to the statute. If you look at Section B, it says, based on the plain meaning of the statute, Section 1 and Section 9. Well, there is no Section 9 of that statute. That was intended to be Section 6. So, with that correction. We look at this statute, and I'm a little biased, I suppose, because I practiced for years when we had the Structural Work Act. The Structural Work Act was also a safety statute. In Section 1 of what is now the Road Worker Safety Act, they changed the name. Section 1 sets a general standard for all traffic, all construction work or bridges within the state of Illinois be performed and conducted that two-way traffic will be maintained when such is safe and practical. And that safe and practical jumps out at me because the standard in the Structural Work Act is safe, suitable, and proper, as we pointed out in our brief. And when it's not safe and practical, or when any portion is obstructed the course of the highway, one-way traffic shall be maintained. Section 6 goes on to talk about what the remedy is if there is injury or death resulting from any violation of the statute. Mr. Allison, it seems to me that the real question, and I don't have an answer to the question necessarily, but the question is if you're doing the resurfacing work, and you've got both lanes done, so you can have two-way traffic, but the shoulders aren't done yet. Correct. Okay. Do you have to wait to open the road up to two-way traffic until after the shoulders are done, or can you presume, you the contractor can presume, that once the surface is laid, the shoulder work is still ongoing, you can have two-way traffic? I don't think you can assume that, Your Honor. I mean, I think that's what the question comes down to in terms of looking at the statute in terms of what the statute requires, isn't it? I would have to differ with you in this regard. The posture of this case is that a motion to dismiss was made on the ground that there was no remedy at all for these circumstances under the Roadworker Safety Act. The only question that the court considered was, says, this statute doesn't apply for a violation of paragraph one. And I respectfully submit that whether the facts of this case would result in a proper verdict is really not before the court. We've stated all the facts in our complaint are admitted. The only portion, only objection they made to the complaint was, there's no cause of action, even with everything you say. And it wasn't based on whether the roadway was safe or not. It was based on the construction of the statute. Am I making sense for you? I don't think we're making sense to each other. As I understand it, the statutory provision that establishes the duty that you've got to have flaggers and one-way traffic and so on and so forth only applies when the resurfacing job is ongoing. I don't. It was ongoing. Okay. Well, that's the issue in my mind. Because the defect here was when the tires stepped off or slipped off the shoulder, which had a gap. And we've all driven on those roads where they've got the lanes done, shoulders aren't. And that's how this accident was caused, correct? When the tires slipped off the shoulder? The driver of the car, my client, the passenger, drove slowly off the roadway, got off the roadway, and tried to whip the car back. She did get it back on the surface. But when she did that, of course, then the car tends to go back. But it was because of that? Because of that. Okay. Go ahead. So the question was, you know, at what point is the road contractor relieved of the obligation to have the flagger or the one-way traffic or whatever safety precautions that they're under duty to have? Is it when the lanes are done or when the shoulders and the lanes are done? It's neither. It's when it is safe and practical to have two-way traffic. That's a fact question. You and I can't solve that today. The expert that we have hired, of course, has his opinions on it. But that's a question of fact. I don't mean to – I hope it's not a smart-aleck answer.  And there are allegations in our complaint that show that they violated certain provisions of the Illinois Highway Safety Requirements. Would you agree that if it's one-way traffic that the Act apparently sets out what the requirements are? I mean, if you are maintaining one-way traffic, you must do this, you must do this, you must do this. Well, if there is a claim or a cause of action under just Section 1, what is it that this Act wants to be done specifically? Or is it just that rather large horizon of it better be safe? Whatever it is, it better be safe. It's a safety statute. The baggage court says it is for the safety of the person using it. But my question is, if the legislature is telling us how to be safe if it's one-way traffic, but all they're telling us if it's two-way traffic under your theory that there ought to be a cause of action or a claim could be stated, they're not telling us anything. They're not giving us any guidelines. They're instead saying it ought to be safe and practicable, but we can't figure out, we're not going to impose the requirement that you have flagment or we're not going to impose this requirement or that requirement. We're just going to say, in those broad, overarching terms, it has to be safe and practicable. That doesn't seem to me to square with an overall plan. What it squares with is the definition of the Safety Act and baggage versus McDougall-Harton. They went to the Structural Work Act in order to construe this Act, the Roadworker Safety Act. They said this Act is patterned after the Structural Work Act. The standard in the Structural Work Act, and we've put it right in our brief and compared it, is safe, suitable, and proper. You've got the word safe in both of them. Suitable and proper, in my mind, is synonymous with practical. It's up to the parties to show, as a factual question, was it safe and practical under the Structural Work Act? Was the scaffold safe, suitable, and proper? The standard in this statute is at least as confining as it is under the Structural Work Act. Safe and practical, safe, suitable, and proper. So that's where we say the Dotson Court went wrong. They had baggage in front of them, they acknowledged it. But they looked at Sections 1, 2, 3, and 4 and said, well, this is all there is to it. If it's two-way traffic, the statute doesn't apply. That's true as to Sections 2, 3, and 4. As to Section 1, if you compare it to the Structural Work Act, it is almost a template. And particularly as to the remedy provision. It is almost virtually identical, the remedy provision. So based on that, we're saying that the Dotson Court failed to look at not only Begich v. McDougall-Harton, but also Cates v. Cates, a Supreme Court decision from 1993, which I imagine you've already seen. But the quote is, lower courts are bound by, even over their dicta from the Supreme Court, and it also says that the lower courts are bound even by the implications of the decisions of the Supreme Court. I see some smiles here. That may be difficult to discern sometimes, I suppose. We get our bags of tea leaves with some regular tea. And I anticipated this, but that case, then you look back to Begich v. McDougall-Harton. Well, what do we make of the fact that since Dodson, the legislature hasn't seen fit to amend the act or to clarify what they meant? Good question. The first and foremost is, again, the Supreme Court of Illinois. Every case that I saw with regard to that concept, it was a Supreme Court decision. And in some of them, they said when this court, the Supreme Court, makes a construction and the legislature doesn't do anything, they've acquiesced. If you're going to have it in the appellate courts, you've got at least four districts and I don't know how many divisions in Chicago. The legislature, should they look at three? Should they look at all six? They've got six divisions. So, approximately ten different possible opinions to look at. It's the Supreme Court. If the Supreme Court makes a construction, yes, that doctrine applies. I didn't do exhaustive research on it. It was primarily West law. But I didn't find one case on this doctrine where somebody said it applied to a construction by the appellate court. It's the Supreme Court. Mr. Allison, there hasn't been a single appellate court case in the entire state, not one, that has said or sought to apply the statute to two-way traffic. That's true. But if I'm the legislature, I'll try to answer that broadly if I can. If you read Dodson and then read the cases that followed it, as I've stated in our brief, every one of those cases is construing Section 4 of the statute. The Macredo case goes so far as to say, acknowledging that, these prior cases are dealing with Section 4. If I'm in the legislature, I'm their counsel, I look at this and I say, well, there's all these cases after Dodson. Every one of them construing Section 4. Every one of them saying two-way traffic doesn't apply. This act doesn't apply to two-way traffic. They're going over what their ruling is going over is broader than the case in front of them. They don't have to say that. All they have to say is Section 4 doesn't apply in this case. If I'm in the legislature, I'm going to say, hey, okay, two-way traffic. Sure as the devil, it doesn't apply to Section 4 when it's two-way traffic. The only case that I find that even came close to construing Section 1 is Dodson. And Dodson is an incorrect, improper decision. It did not follow Supreme Court guidelines in making their decision. I want to be as respectful as I can, and I will be. But they were looking for a way not to apply this statute. The statement in this opinion that it's obvious that this statute only applies in this super dangerous case where there's a one-way road, one lane closed, or both. Bob, where did they get that? There's nothing in there. I think that's their take on the case. That's for the legislation itself. Then they make the statement, you know, this case is going to open the floodgates to litigation. Well, the wisdom of passing the statute is up to the legislature. They didn't want to apply Section 1. Their motive, I guess, is probably not as important as what they in fact did. And what they did, and again, if you look at the decision, I'm not sure what it does hold. Because they discuss Section 1, and they tell that there was an instruction that was overly broad and included some of the language of Section 1. And then they say in the next paragraph, but regardless of that, they couldn't win on the facts anyway. So the decision, I'm not sure, excuse me, exactly what it does mean. But I know this, they did not follow what amounts to, if you look at the Cates case, they didn't look at the holding of Veggage v. McDougall-Hartman. The clear, solid implication for McDougall-Hartman is you use prior decisions of other safety statutes to construe this safety statute. The Supreme Court was deciding in Veggage whether contributory negligence should apply in a structure under the Roadworker Safety Act. To do that, they went back to the turn of the century. One of them was in a coal mining safety act case. One had to do with children, and I forgot the exact title. But they went back to other safety statutes to determine whether contrib applied to this safety statute. It didn't apply to the prior safety statute, so it didn't apply here. Now this is, we're not, you know, contributory negligence is not an issue. What is an issue is, with that process being followed by the Supreme Court in Veggage, it was incumbent upon the Dodson v. Shaw court to say, these, we're taking this implication from Veggage that you have to go look at other safety statutes, and if they had looked at the Structure Work Act, I don't know how they could have decided otherwise. How much time do I have? Thank you. Your red light is on, so we'll hear from you on rebuttal. All right. Thank you, sir. Thank you. May it please the court, counsel. My name is Michael Rieses, and I'm here today on behalf of the defendant, Apelli Streeter Asphalt. In granting the motion to dismiss, the trial court noted an, quote, abundance of case law, close quote, abundance of case law holding that the statute does not apply where two-way traffic is maintained. Here, taking the allegations of the plaintiff's complaint as true, specifically paragraphs 19, 20, and 21, County Highway 14 was open for two-way traffic at the time of the one-vehicle accident. Whose decision was it to open it to two-way traffic? Is it the contractor or the county highway department? The record would not answer that question. But what is clear on the basis of the complaint is that two-way traffic was maintained, and there is a uniform and coherent body of case law stretching back 25 years that says the statute does not provide a remedy where two-way traffic is maintained. What if the decision to open that stretch of road to two-way traffic, given that one side's shoulder was done, the other side's shoulder was not done, was improvident and... It would support a cause of action for negligence based upon what I... Common law negligence. That was either created by a contract or some type of uniform manual of regulation or... And there's nothing unusual about that. The common law has provided a remedy for years. The question in this case is not whether or not the plaintiff had a remedy. It's whether the plaintiff had a remedy under the statute that was in strict liability where this pertinent sections of the statute do not address the situation of two-way traffic, but only either one-way traffic or where the road is closed altogether to traffic. And we submit that based upon that body of case law, the trial court should be affirmed. The language and structure of the Act supports the conclusion that the Act applies only where one-way traffic is maintained or where the roadway is closed to all traffic. We heard somewhat from counsel about Sections 1 and 6 of the statute, but we really didn't hear anything about Sections 2, 3, and 4. Section 1 of the statute simply expresses a legislative preference that two-way traffic is to be maintained where it is safe and practicable. And where it is not safe and practicable, then one-way traffic should be maintained unless the only safe alternative is to have the roadway closed to traffic altogether. Sections 2 and 3 apply where one-way traffic is maintained, the contractors to provide flagment or traffic signals, and Section 2 and 4 can also apply where the highway or bridge is closed to traffic. Why would Mr. Allison discuss those sections? I mean, why would he? He's not saying those apply. But those sections have to be considered to arrive at a uniform interpretation of the statute. I agree. Those sections don't support them. Do you agree with him that all the other cases, this body of case law, other than Dodson, all deal with specific provisions, 2, 3, or 4? I agree that they all apply to those sections because those are the sections. Because there were bridges or highways involved in those cases. Bridges. Right, where there would have been either one-way, well, right. Where there would have been flagmen or where there would have been traffic. It's not so much whether it's one-way or two-way, but whether there would have been flagmen, barricades. Wait a minute. It has to be so much whether it's one-way or two-way. Yes, that's right. That's what the statute says, right. But what I'm saying is that those sections deal with flagmen, barricades. In one-way traffic. One-way or in Section 4 if it's closed to traffic. Closed to traffic. Altogether. There is no section of the statute that expressly applies to two-way traffic. Now one section of the statute addresses that situation. That is what the courts have recognized. The courts recognize that because the statute imposes strict liability, it is addressed to the unusually dangerous situation where the road is closed to all traffic or open only to one-way traffic. And the courts recognize that if the points of construction of the statute prevail, then the act would be applicable to virtually any situation where there was road work being performed on a bridge or highway and an accident resulted even though at that time two-way traffic was being maintained, which means that this case would be Exhibit A for what the courts say is not the situation where... Except the plaintiff would have to prove that it was unsafe and impractical. They'd have a pretty heavy burden of proof when you start talking about industry standards and practicality regarding the movement of traffic and how wide the lanes are. I mean, you can talk about it opening the floodgates, but it still would be a question of whether it was safe or practical to open the road to two-way traffic and the plaintiff would bear the burden of proving that it was not in order to establish some violation of the act, if the act applied. It is true enough that the plaintiff would have the burden of proof. I agree with that. But the point is that because the statute imposes strict liability, comparative negligence wouldn't be a defense. That's what Vegich holds and obviously we're not contesting that. But the statute does not address... I mean, if you look at the language, the statute does not address the situation of two-way traffic. It is expressing a preference that two-way traffic should be maintained where safe and practicable, but then it goes on to say when not it should be one-way or closed altogether. It's not creating a cause of action for the situation where two-way traffic is maintained but not being maintained in a way that is safe and practical. That's not what Section 1 says and that's not what Section 6 says. So that safe and practical in a sense is really an editorial comment. It is setting forth a legislative declaration, but it's not in and of itself the type of do this, do that. The two, three, and four, the following sections, which have to be interpreted in conjunction with Section 1 because those sections are as much part of the statute as Section 1. And the court is not writing on a blank slate here. Although the plaintiff has criticized Dotson, this court has the benefit now of 25 years of case law that has uniformly reached the same result in Dotson. Stereo-decisis, something which we haven't heard very much of this morning, is a policy that promotes even-handed, predictable, and consistent development of legal principles, fosters reliance on cases, and contributes to the integrity of the judicial process. We have no less than six appellate decisions from around the state that have all reached the same result. And those principles, I submit, are especially compelling when the issue before the court involves a matter of statutory interpretation where stability and predictability are paramount. Now, I think, Justice Knapp, you made the point that the General Assembly has not seen fit to amend the statute after Dotson for the past 25 years and abrogate these cases. So, it must be understood as having acquiesced in the prevailing judicial construction. Well, except I thought that was a good question when I asked it, but now that I think about it, why is the legislature going to say anything about a case that involves a bridge or one-way traffic? Why is it going to say anything about... because those cases are consistent with what the legislature was doing. Well, but he's... counsel is criticizing Dotson because it didn't create... That's one case. Well, okay. And when counsel says that this doctrine doesn't apply unless there's a Supreme Court case, well, that's not true. If you go to the recent Supreme Court decision in Reedy, which involves section 2-1117 of the code, and I know the court's familiar with Reedy because the court had decided Skaggs some time ago, the Supreme Court, in its wisdom, drew some support from the fact that the legislature had not changed the law after the first appellate decision came down in a case called, I think, Lily Rope from the 5th District back in 1995. And the Supreme Court said, well, the fact that the appellate court did not... the fact that the General Assembly did not amend the statute in the face of this appellate decision that said that several parties don't go on the verdict form is support for the fact that it was consistent with the legislative intent. And I would say that Dotson v. Shaw is equally consistent with the legislative intent. It has acquiesced and has not changed the law going back... stretching back 25 years. Council has relied on the Structural Work Act, and that reliance is misplaced. I mean, we all know that the Structural Work Act was repealed by an act of the legislature effective February of 1995, and Illinois courts have long held that reliance upon a repealed statute is improper. Vedic from the Supreme Court, they could look at the Structural Work Act in 1981 because the Structural Work Act was good law in 1981. But this court doesn't have the same liberty today to look at the Structural Work Act when that act was repealed in 1995. And to the extent that the plaintiffs... Well, yes, but it wasn't repealed because it's a bad idea to construe safety statutes of various kinds so that they might be consistent with one another. I agree. All I'm saying is that there are cases that say, and we've cited them in our brief, that once the statute has been repealed, you've proceeded your own risk in relying upon case law that's based upon a statute that's been repealed, and it's no longer good law. We're not questioning that the Road Worker Safety Act is a safety statute. We're not questioning that comparative negligence wouldn't be a defense to a cause of action. But we have a right to rely on a uniform body of law from around the state that has held consistently that the statute does not apply where two-way traffic has been maintained. It applies only in the extremely dangerous situation where the traffic is limited to one way, which is what baggage was...involved baggage, or where the traffic is closed altogether. The plaintiff's arguments are not new. They have been considered and rejected by the appellate panels around the state, and we are grateful for the opportunity to address the Court today. We know that it is a privilege and not a right to be heard for oral argument. And for all the reasons set forth in our brief and at argument today, we ask you to affirm the trial. Thank you. Thank you, counsel. Rebuttal? Can I get a decision item on this case? Certainly. In the case of Miller v. Lockett, I don't have the Illinois site, 75 Illinois Decisions 224. This is what the Court said about the legislature acquiescing. When this Court interprets a statute as in Cohen, that interpretation is considered as part of the statute itself, and until the legislature amends it, contrary to the interpretation. And they cite one, two, three cases, all of which are Supreme Court decisions. Miller v. Lockett is a Supreme Court decision. This idea about repealed statutes is one of those red fish. In Vegich v. McDougall-Hartman, the Court relied on three cases that were interpreting and construing repealed statutes. Statutes that had been repealed at the time they made the decision. We're not relying on the Structural Work Act. We're relying on a decision where the Court interpreted another safety statute. I don't know why I have to. But for this defendant and for all the defendants in those cases, that 25-year history, not to mention Dodson, to write down in English in black and white that there's nothing in this statute about two-way traffic is a travesty. Section 1 says, All construction work upon bridges or highways within the state shall be so performed and instructed that two-way traffic will be maintained. A number of these cases, the Act doesn't apply. Two-way traffic isn't covered in the statute. It is covered in the statute. Those prior opinions at Dodson are wrong. We need to call a spade a spade. And they have misled the courts, they have misled counsel, misled litigants for 25 years. It is in this statute. And what more do they need? What is it they don't understand about the word any? Because Section 6 says, Any subcontractor or subcontractor, and you were questioning who had the power to do it, the contractor does. Under the statute, we put in our brief the provisions of the contract that obligate him to submit a safety plan, a traffic control plan. It's his obligation to make that determination. Is it safe in practice? And if it isn't, he either goes to one lane or he goes to the county and asks them to close it altogether. The rule of stare decisis is lurking in the background, it seems to me. The Dodson case is a fine example of violating stare decisis. They didn't follow Vigage. They didn't follow Cates. Cates says, if there's an implication, you follow it. And I may see some grins here again, I know. But it is clear as the nose on my face, they used the Structural Work Act. It wasn't just a safety statute. They said this case, this statute, the Roadworker Safety Act, is patterned after the Structural Work Act. I think there's two different choices the court, two different routes. The court could say we're not going to follow Dodson because we think that the Supreme Court authority is stronger or there's been no ruling on this particular point in this district. The court could say sound reason and principle lead us to a decision contrary to Dodson. I think the court could go either way. But the court in Dodson, not only, really there's two sins, there's two defects. They wouldn't follow Vigage. They wouldn't follow the Structural Work Act. And they overstepped their bounds in relationship to the legislature. They went in and decided what the purpose of this statute was. They went in and said this is going to open the floodgates. It's always a pleasure to be here. I appreciate your attention. We'll hear from you, I suppose. Thank you.